UNITED STATES v. THOMAS et al.

SAME v. CROSBY et al.

(District Court, W. D. Missouri. April 19, 1906.)

Nos. 2,533, 2,539.

1. INDICTMENT—MOTION TO QUASH—LACK OF EVIDENCE.

A court cannot set aside an indictment for lack of evidence to support it, even in those jurisdictions where such a motion may be entertained, when there was any evidence before the grand jury on which to base it.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Indictment and Information, § 483.]

2. CONSPIRACY—FEDERAL STATUTE—OFFENSE AGAINST UNITED STATES.

Rev. St. § 5440 [U. S. Comp. St. 1901, p. 3676] which makes it a misdemeanor to "conspire either to commit any offense against the United States or to defraud the United States," when any act is done to effect the object of the conspiracy, must be construed as standing alone, and covers all conspiracies to commit an act which is made a criminal offense by the laws of the United States; and the fact that the overt act charged to have been committed may constitute a substantive offense on the part of one or more of the accused under the statute which they conspired to violate does not relieve them from liability to prosecution for the conspiracy, at least where such offense is also a misdemeanor.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Conspiracy, § 70.]

On Motions to Quash Indictments.

A. S. Van Valkenburg, U. S. Atty. and Leslie J. Lyon, Asst. U. S. Atty.

O. M. Spencer, Hale Holden, W. D. McLeod, and H. C. Timmonds, for defendants.

McPHERSON, District Judge. These two cases were recently submitted on the same arguments, and being alike, will be ruled on at the same time.

1. The indictments are under section 5440 of the Revised Statutes, as amended [U. S. Comp. St. 1901, p. 3676]. Each of defendants, in each case, moves to quash the indictment. One ground is that there was not sufficient evidence to warrant the return of the indictments. In many jurisdictions, a motion like these would not be entertained. And in those jurisdictions where allowed, it is wholly discretionary. Of course that does not relieve the court from deciding the matter according to the very right. But under the showing made, by oral testimony, assuming, that such evidence is competent, it appears that the grand jury had some evidence on which to base the indictment. I express no opinion as to how much evidence there was; but much or little, there was evidence. And evidence having been presented, the question is at an end. If this were not so, then the court would be reviewing the action of the grand jury, and this cannot be done.

2. The question calling for more consideration is as to the construction to be given to section 5440 of the Revised Statutes, as amended [U. S. Comp. St. 1901, p. 3676], under which the indictments were returned, and what kind of conspiracies the statute denounces. The conspiracy charged is that the defendants Thomas and Taggart, were allowed large commissions from the Chicago, Burlington & Quincy Railway Company, operating a line of railway from Kansas City to Chicago, for all freight from certain Atlantic seaboard cities, to Kansas City, routed over that railway, and that defendant Crosby was general freight agent of the road, and it is charged that the three, with certain merchants of Kansas City, conspired to defeat the provisions of the statute of February 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154] commonly called the "Interstate Commerce Act," and the statute of February 19, 1903, c. 108, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599], commonly called the "Elkins Act." These statutes were to be circumvented, by routing the freight over said line of road, and the Kansas City merchants were to pay the regular and tariff rates. Then out of the large commissions allowed Thomas and Taggart for

thus routing the freight, they were to pay back to certain Kansas City merchants, a part of said commissions, which, in effect and in fact, were rebates, and crimes under the two statutes referred to. The conspiracy charged is followed by allegations of certain overt acts in which rebates were paid out of the commissions received by Thomas and Taggart. And the argument of defendant's counsel is that as such acts, if true, were completed offenses under those statutes, that prosecutions therefor must be under those statutes. And it is earnestly contended that section 5440, as amended does not cover a conspiracy for the violation of the Interstate Commerce and the Elkins Acts. That is to say, it is contended by counsel for defendants, that if the things complained of in the indictments were done, then under the statutes of 1887 and 1903, indictments could be sustained, followed by the imposition of fines. And that being so, it is contended that section 5440 cannot be resorted to, to be followed, if convictions are obtained by judgments of either a fine or imprisonment simply because of concerted actions from unlawful agreements to violate the statutes of 1887 and 1903.

The history of 5440, as I understand it, is as follows: The act of March 2, 1867, entitled "An act to amend existing laws relating to internal revenue and for other purposes" is one of 34 sections, and covers many phases of the Internal Revenue Laws. Section 30 thereof provides:

"That if two or more persons conspire either to commit any offense against the laws of the United States, or to defraud the United States in any manner whatever * * * the parties to said conspiracy shall be deemed guilty of a misdemeanor"—

The punishment for which was fixed at both fine and imprisonment. 14 Stat. 471–484, c. 167 [U. S. Comp. St. 1901, p. 3676].

That section was the basis of 5440 of the Revised Statutes [U. S. Comp. St. 1901, p. 3676]. But by the same Congress (Thirty-Ninth for the years of 1866 and 1867) by an act approved June 27, 1866, it was provided for a commissioner to be appointed by the President, to codify all laws which should be in force at the date of completion of the codification. Two things were requisite for the codification: (1) It was to be more than the usual codification. All obsolete and redundant statutes and parts thereof were to be omitted, and such omissions were to be supplied with additions and corrections, changes of sections, chapters, and classifications, as would make it a harmonious whole; (2) when such codification and such changes were made, and printed, it then had to receive the approval by an enactment by Congress. 14 Stat. 74, c. 140 [U. S. Comp. St. 1901, p. 3755]. So that by section 30 of the act of March 2, 1867, above noticed, and the work of the commission under the statute of June 27, 1866, and possibly changes by Congress, we have section 5440 of the Revised Statutes of 1873, pursuant to an act of December 1, 1873. Congress in adopting the Revised Statutes placed all the Criminal Statutes under title 70, entitled "Crimes," and in 9 chapters [U. S. Comp. St. 1901, p. 3619]. Section 5440 was placed in chapter 5, entitled "Crimes against the operation of the government," a chapter of more than 60 sections, covering a great variety of crimes, the subject of internal revenue being but a small part. And thus the section (5440) has remained until the present time as a law, except by an act of May 17, 1879, the minimum fine was stricken out,

and giving the court the power to inflict either a fine or imprisonment, or both. 21 Stat. 4, c. 8 [U. S. Comp. St. 1901, p. 3676].

It is conceded by defendant's counsel that the statute is not alone directed against offenses concerning the internal revenue, because of the case of Clune v. United States, 159 U. S. 590, 16 Sup. Ct. 125, 40 L. Ed. 269. In that case the indictment was under 5440 for a conspiracy to do an act which was a crime by interfering with the mails. And in view of that decision, the contention is narrowed to the claim that the unlawful act or crime must be one against the operation of the government, or some department thereof. And it is true that chapter 5 of title 70 [U. S. Comp. St. 1901, p. 3660], in defining special acts as crimes, is largely, if not entirely, devoted to acts against the operation of the government, such as counterfeiting the currency, forgeries of public documents, interfering with the public lands, the postal system, and so on. No one denies but that it is within the power of Congress to denounce as a crime, an act which effects but a single individual, save as all immoralties effect good government and society. Therefore we have federal statutes against assaults, robberies, larcenies, and so on. And such a crime is an "offense against the United States," adopting the first sentence of section 5440, because that section in part recites "if two or more persons conspire either to commit any offense against the United States" shall be punished as for conspiracy, as well as those who conspire "to defraud the United States." In other words, the statute covers cases against two classes of conspirators: (1) Those who conspire to commit any offense against the United States. (2) Those who conspire to defraud the United States, whether such frauds are of themselves indictable or not.

It must be kept in mind that a crime covered by section 5440 is a misdemeanor, and that a violation of the act of 1887, and the amendments thereto, is but a misdemeanor, and the argument that the one is merged in the other is without force. Whether the conviction or acquittal of the one could be pleaded in bar as to the other is a question not before the court. But the violation of the commerce statutes being an offense, it can only be an offense against the United States. And being an offense, why it is not covered by section 5440, I am unable to see. It follows that the only remaining question is, what have the courts held as to the proper construction of the statute? The holdings are not uniform. As against the foregoing are the following cases: United States v. Clark (D. C.) 121 Fed. 190, by Archibald, District Judge; United States v. Fehrenback, 2 Woods, 175, Fed. Cas. No. 15,083, by Judge Woods; United States v. Dennee, 3 Woods, 52, Fed. Cas. No. 14,948 by Judge Woods; Curley v. United States, 130 Fed. 1, 64 C. C. A. 369, by the Circuit Court of Appeals of the First Circuit, but in dictum only. But the weight of the authorities is to the contrary.

In the case of In re Coy (C. C.) 31 Fed. 794, was decided by Mr. Justice Harlan on the circuit, and was an application for a writ of habeas corpus. The prisoner, with others, was under indictment under section 5440, the alleged conspiracy being to violate certain state statutes, and section 5511 of the Revised Statutes with reference to the election of representatives in Congress. The writ was denied. And the judgment of Mr. Justice Harlan was affirmed in 127 U. S. 731, 8 Sup. Ct. 1263, 32 L. Ed. 274.

The case of United States v. Owens (D. C.) 32 Fed. 534, decided by Deady, District Judge, was an indictment under the second clause of section 5440, for a conspiracy to defraud the government of part of the public lands. While the question before this court was not before that court, yet Judge Deady said:

"For the demurrer it is argued that section 5440 applies only to a conspiracy to defraud the revenue of the United States. The reason given is that the section being taken from section 30 of the act of March 2, 1867, c. 169, 14 Stat. 471 [U. S. Comp. St. 1901, p. 3676] entitled, 'An act to amend existing laws relating to internal revenue, and for other purposes,' the words 'to defraud' must be limited to the subject-matter of the act—the internal revenue. The subject of the act is not limited by its title to revenue of any kind, but expressly includes 'other purposes' or subjects. The language of the section gives no evidence that it was the intention of Congress to limit its operation to frauds upon revenue. Taken in its natural sense, the language includes a conspiracy to commit 'any' crime against the United States, or to defraud it in any manner; and there is nothing in the circumstances of the case which ought to prevent it from having effect accordingly. As found in the Revised Statutes, there are some verbal changes in the section which only emphasize the general purpose and character of the statute. It is a wholesome and much needed act; and it is difficult to assign any reason compatible with the public good, or the protection of the public property or dues, why any conspiracy to commit a fraud thereon or thereabout should be excluded from its operation."

In the case of Mackin v. United States, 117 U. S. 348, 6 Sup. Ct. 777, 29 L. Ed. 909, the charge was under 5440 for a conspiracy in tampering with the returns of an election of a representative in Congress. The point decided in the case was that the accusation should have been by indictment instead of by information. But inferentially it can be said that had the accusation been by indictment, that it would have been within the statute.

Section 5358 of the Revised Statutes [U. S. Comp. St. 1901, p. 3639] denounces as a crime the act of stealing from a vessel in distress. And in the case of United States v. Sanche (C. C.) 7 Fed. 715, Judge Hammond, District Judge, held that an indictment for conspiracy against two or more for the violation of section 5358, could be sustained under section 5440. In the opinion he said:

"I am of opinion, therefore, that we cannot, on the principle of that case (United States v. Fehrenback, 2 Woods, 175, Fed. Cas. No. 15,083), be required to restrict section 5440 to such offenses as operate to injure the government itself, but that it covers every conspiracy to commit an act made an offense or crime by any law of the United States, as well as an act that may defraud the United States in any manner whatever."

In the case In re Wolf (D. C.) 27 Fed. 606–611, Parker, District Judge, said:

"It is manifest that to constitute a criminal offense under this section (5440), the object of this conspiracy must be to commit some offense against the United States; that is, to do some act made a crime by the Laws of the United States, or to defraud the United States."

The indictment charged a conspiracy to defraud the Cherokee Nation. Section 5132 of the Revised Statutes denounces as a crime an act of a bankrupt in concealing and disposing of his assets of the estate. By so doing the creditors only are injured. And for the violation of that section by conspiring to so do, Judge Dillon, in United States v. Bayer, 4 Dillon 407–410, Fed. Cas. No. 14,547, after discussing other questions said:

"But if it be true that none but the bankrupt can be indicted under section 5132, still it is clear that other persons can combine and confederate with him to commit the acts therein made offenses against the United States. By section 5440, conspiracies to commit any offense against the United States are made punishable, provided some act is done to effect the object of the conspiracy. The statute is based upon the common-law principle that conspiring to commit a crime is of itself criminal, but adds the requirement of an overt act, and the fact that one of the conspirators could not himself commit the intended offense neither relieves him of guilt nor disables him from co-operating with another person who is able to commit it."

And the motion to quash the indictment was denied.

The subject of conspiracy, both at common law and under section 5440, is elaborately discussed by the Circuit Court of Appeals for the Ninth Circuit in the case of United States v. Benson, 70 Fed. 591, 17 C. C. A. 293. While the indictment was under the second clause of the section, the court said:

"What facts are necessary to be alleged in the indictment in order to constitute an offense punishable under the provisions of section 5440? It will be observed by reference to the language of this section that it embraces two separate and distinct offenses, viz.: First, a conspiracy to commit an offense against the United States; second, a conspiracy to defraud the United States in any manner or for any purpose."

The case of Stokes v. United States, 157 U. S. 187, 15 Sup. Ct. 617, 39 L. Ed. 667, was an indictment under section 5440 charging a conspiracy to unlawfully use the mails under section 5480 [U. S. Comp. St. 1901, p. 3696]. The government was in no sense defrauded, nor was the operation of the government interferred with, unless carrying forbidden letters was an interference. The recipients of the letters were the persons wronged, and the judgments of conviction were sustained.

The case of United States v. Cassidy (D. C.) 67 Fed. 698, was a case heard by Morrow, District Judge. The indictment was under the statute in question and the conspiracy was to do two unlawful things, viz.: (1) To impede the mails; (2) To impede commerce between the states. And the latter was given as much prominence as the first.

Reilley v. United States, 106 Fed. 896, 46 C. C. A. 25, the Circuit Court of Appeals for the Sixth Circuit sustained a conviction for conspiracy under section 5440, the unlawful thing agreed upon being to distribute lottery tickets, partly by mail, and partly by carriers from one state to another.

The original statute of March 2, 1867, as has been stated, was of 34 sections, and all but section 30 was with reference to the internal revenue. But section 30 was with reference to conspiracies and the language was "to commit any offense against the laws of the United States." For some reason not disclosed, so far as I am advised, when the section was carried forward into section 5440 of the Revised Statutes, it was changed to read "to commit any offense against the United States." But it was only a change of phraseology, and not of meaning, because there is not, and cannot be, any offense against the United States, that is not against the laws, for the reason declared over and over again, until it is now commonplace, that we have nothing but statutory crimes. And if an act is against the law, it is against the United States, and if against the United States, it is because it is against the laws, and by "laws" is meant "statutory laws."

Our Criminal Code is in one title (70). And that title is subdivided into 9 chapters. And because section 5440 is within chapter 5, entitled "Crimes against the operations of the government," it is urged that the section must be limited to acts against the operations of the government. But Justice Miller said in United States v. Hirsch, 100 U. S. 35, 36, 25 L. Ed. 539, that as to a crime committed before the adoption of the Revised Statutes, that section 30 of the original act, now section 5440, should be considered as though an independent statute. And whether section 5440 was properly classified and made part of chapter 5 of title 70 is of no consequence. Title 74 of the Revised Statutes [U. S. Comp. St. 1901, p. 3750] is upon the subject of construction of the statutes. Section 5595 [U. S. Comp. St. 1901, p. 3750] is to the effect that the preceding 73 titles contain all the laws of the United States then in force.

And section 5600 [U. S. Comp. St. 1901, p. 3751] is as follows:

"Sec. 5600. The arrangement and classification of the several sections of the revision have been made for the purpose of a more convenient and orderly arrangement of the same, and therefore no inference or presumption of a legislative construction is to be drawn by reason of the title, under which any particular section is placed."

Most of the cases are of those where the conspiracy was to defraud the government, or against the operations of the government, but that is no argument against the scope of the statute. And if it were, it is by no means certain that the Interstate Commerce Commission is not a department of the government, and all statutes upon the subject of commerce, to an extent at least, are to be enforced by that commission. The holding is that section 5440 must be interpreted as though standing alone. It covers all conspiracies. And the subject of the conspiracy may be any act covered by any criminal statute; in any event that which is a misdemeanor. Of this conclusion I am not in doubt. But if in error, it can be corrected, but could not be if I were to otherwise hold. Of course no judge would decide against a defendant, and for the government, on the ground that a defendant only can have the decision reviewed, nor would he decide against the government to cut off a review. But all judges are pleased when these rulings, and especially in cases of public interest, can be and are reviewed, as can be done in the cases now before the court.

The motion to quash in both cases will be denied. And in so ruling, it is deemed proper to state: (1) The two questions covered by this opinion only are decided. Other assignments of motions to quash were not discussed. The others can be considered later, provided they are such objections as could then be first urged. (2) In case No. 2539, a ruling is not made as to whether the indictment charges defendant Crosby with the alleged conspiracy, or only in committing overt acts. The indictment is peculiar, and somewhat unusual in that respect. It must be kept in mind that defendants are charged with the crime of conspiracy, and for no other crime.

But that question was only alluded to in argument, and it calls for more consideration than was given to it by counsel, and more by the court than can now be given.